## ANNA WYZGA vs. THE DAVID HARLEY COMPANY.

### MAY 19, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J.   This is an action of trespass on the case for negligence.  At the trial of the case in the superior court the defendant rested at the conclusion of the plaintiff's evidence and moved that the trial justice direct the jury to return a verdict in its favor.  The plaintiff then moved that the trial justice direct the jury to find in her favor on the question of liability, and leave to the jury only the question of damages. The trial justice thereupon granted the defendant's motion and denied that of the plaintiff.  She is now prosecuting her bill of exceptions in this court to the above rulings of the trial justice.

From the evidence it appears that the defendant conducts a department store in the city of Pawtucket.  The plaintiff's contention is that she was a customer in said store and, while in the exercise of due care, fell and was injured when about to descend a stairway which extended from the second to the first floor of said store.  The plaintiff's declaration is in one

count and alleges that the defendant allowed the floor and stairs of the building wherein it operated its store to become worn and dangerous; that the defendant had or should have had notice of these defects and that such defects caused the plaintiff to fall and be injured.

Lack of notice or knowledge of the condition of the stairway at the time the accident happened is not relied upon by the defendant as a defense to the present action. Its attorney made the following statement at the trial of the case: "I am willing to go on record and say as far as the condition of that stair on May 2 was concerned, we knew the condition of the stair and so there is no question of either constructive or actual notice."

The plaintiff, in her testimony, did not describe in any way the condition of the floor or stairs at the time she fell. She gave evidence that on the day of the accident she did not notice the stairway particularly; that she had, a short time before the accident, ascended these stairs; that she had frequently purchased articles in the defendant's store and had used this stairway; that she noticed no change in the condition of the stairs on that day from what had been their condition previously when she had been in the store and that the stairway was the same as it had been before.

The plaintiff, who testified that she fell when starting to descend the stairs from the second to the first floor, gave the following description of what happened: Q. "I understood you to say you put your right foot toward the first step below the floor." A. "The first step below the floor." Q. "And you had your hand on the rail?" A. "I had my hand on the rail." Q. "Which hand?" A. "My right." Q. "And then where was your left foot at that time?" A. "My foot was on the top." Q. "Then what happened to your left foot?" A. "Well I put my right foot on the second step and my left foot slipped that time." The plaintiff at no time testified as to what caused her left foot to slip. In cross-examination she stated that there was no covering over the nose of the stair

in question, but that there was rubber matting on the second floor of the store which matting extended to within a short distance of the top step of the stairway.

Several friends of the plaintiff gave evidence that, after the accident, they went to the defendant's store and examined the stairway in question and especially the second floor at the point where the stairs were located. These examinations were made at times varying from three days to a few weeks after the accident. These witnesses all testified, in substance, that the stairs in question and the second floor of the building were of wood construction; that the board which was directly at the top of the stairs and was part of the second floor of the building was about one and one-quarter inches in thickness; that where people usually walked in using the stairs this board was worn at its outer edge, but not all the way across or near the sides of the stairs. They also testified that the board in question, when they viewed it, was worn at its edge "down to a point like", and "it was all sharp like," and that this condition extended back from the outer edge of the board a few inches. There was, however, no evidence that the depth of the board was completely worn through, or that the edge or nose of the board was in any manner indented, broken or slippery at the point in question. One of these witnesses, who was with the plaintiff at the time the accident took place, testified that she did not know what caused the plaintiff to fall, but that the latter did not turn her ankle.

It is our opinion that, on this state of the record, the trial justice ruled correctly in granting the defendant's motion that a verdict be directed in its favor, and in denying the plaintiff's motion hereinbefore referred to. The defendant is, of course, not an insurer of the safety of its customers. It was incumbent upon the plaintiff to present legal evidence, either direct or from which reasonable inferences could be drawn, sufficient to raise questions of fact for the jury to determine; first, as to whether or not the floor and stairway in

question, as maintained by the defendant, were in a dangerous condition; and second, whether or not such condition was the proximate cause of the plaintiff's fall. In our judgment, the evidence submitted by the plaintiff fails to meet this standard.

In coming to this conclusion we are not unmindful of our well-established rule that on such a motion as the defendant made to the trial justice the weight of the evidence is not in issue, but that the view of the evidence most favorable to the plaintiff must be taken by the trial justice, and that the plaintiff must be given the benefit of all legitimate and reasonable inferences which can properly be drawn in her favor from such evidence. However, in the present case there is no evidence that the condition of the stairway and the second floor, both of which were in constant use by large numbers of people, as the record shows, were in any way dangerous. Also, there is an entire absence of evidence that the condition of the stairway and second floor, whatever it may have been, was the proximate cause of the plaintiff slipping and falling. The necessary causal connection is lacking.

We are of the opinion that if the trial justice had submitted the above issues to the jury, they would have been obliged, on the evidence presented, to merely conjecture and speculate regarding the cause of the accident to the plaintiff; and that such evidence was insufficient to furnish the basis of reasonable and legitimate inferences that the defendant was guilty of the negligence complained of by the plaintiff and that such negligence was the proximate cause of the accident in question.

The parties have brought to our attention numerous authorities. We are of the opinion that the case of *Langley* v. *Woolworth Co.*, 47 R. I. 165, relied on by the plaintiff, is distinguishable on its facts from the instant case. In that case the court held, in substance, that it was a question for the jury as to whether or not the presence of peanuts and peanut

shells, *viz., a foreign substance,* on the floor of the defendant's store constituted a dangerous condition, and also as to whether or not the defendant had notice of such a condition. A majority of the court further held that there was sufficient evidence to warrant a finding by the jury that the peanuts caused the plaintiff to fall. Clearly there were important elements shown in that case which are not present in this case.

The case of *Royer* v. *Najarian,* 60 R. I. 368, 198 A. 562, recently decided, and in which we refused to sustain a nonsuit granted by the trial justice, in our opinion differs materially from the case at bar. In that case there was expert evidence that the smooth, sloping terrazzo floor of a vestibule of defendant's store was dangerous to walk upon when wet, and that this condition could be corrected by the use of a rubber mat or in other ways. There was also legal evidence that the plaintiff in that case fell on the vestibule floor, and that said fall was caused by the slipperiness of the wet floor and the steepness of its slope. In addition, it did not appear from the evidence in that case that the plaintiff therein, who had been in the defendant's store only two or three times, had ever before used the vestibule in question.

In our judgment the instant case resembles certain aspects which were present in the case of *Ziegler* v. *Providence Biltmore Hotel Co.,* 59 R. I. 326, 195 A. 397, where the plaintiff slipped and fell while descending marble stairs which were allegedly wet. In sustaining the direction of a verdict for the defendant in that case we made the following statement, which is applicable to the record submitted in the present case: "An examination of the transcript discloses vital gaps in the evidence which cannot be supplied, except by speculation or by assumption of matters not properly in evidence. The jury would be entitled to base its verdict only on the evidence properly before it." In that case we also used the following language which is not inappropriate to the case now before us: "Counsel for plaintiff contends substantially that the second stair must have been slippery and dangerous be-

cause she slipped and fell on it. This reasoning begs the question to be proved and is therefore faulty. She might have fallen because of any of several other causes of which the defendant had no reasonable notice and for which it would not be liable." See also *Chapman* v. *Clothier*, 274 Pa. 394.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for the defendant on the verdict as directed.

*George Roche,* for plaintiff.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for defendant.