Virginia MEAD et al.

v.

PAPA RAZZI RESTAURANT et al.

No. 2002–648–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2004.

Mark P. Dolan, Providence, for Plaintiffs.

Jeffrey H. Garabedian, Providence, for Defendants.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

Because we believe that the trial justice erred in granting the defendants' motion

for judgment as a matter of law in this slip-and-fall case, we reverse the judgment of the trial court and remand this matter for a new trial.

On September 13, 1997, plaintiffs, Virginia and Richard Mead, husband and wife, dined at the Papa Razzi Restaurant in Garden City Plaza, Cranston, after an afternoon of shopping. After entering the restaurant, the couple was promptly led by a hostess to a table accessed by a long walkway. After eating, the couple proceeded toward the entrance, following the same path they walked when they arrived at the restaurant. On the way out, the couple stopped to talk for about five minutes with two acquaintances seated at a nearby table. By this time, the restaurant was much more crowded than it was when they arrived, and the establishment bustled with activity. As they made their way to the door, Mrs. Mead followed just behind her husband. Suddenly, her left foot slipped out from under her and she went down to the floor onto her right knee with significant force. Her husband came to her side and an ambulance was called. While they awaited medical treatment, both plaintiffs observed a puddle of liquid, approximately six inches in diameter, near where the fall had originated. An agent of the restaurant collected some information from the Meads, but there was no discussion of the incident at that time. Mrs. Mead sustained a fracture of her right kneecap. She underwent surgery and rehabilitation, and claims continuing disability from her injury. The plaintiffs claim that defendants' negligence caused her injury. Mr. Mead seeks to be compensated for the loss of his wife's comfort, society and consortium.

The defendants, Papa Razzi Restaurant, Back Bay Restaurant Group, Inc., and BBRG Rhode Island Restaurants, Inc. (hereinafter defendants),[1] denied that the injury was a result of any wrongdoing on the part of the corporation or its agents. A jury trial commenced on September 3, 2002, and plaintiffs presented three witnesses, Virginia Mead, Richard Mead, and Karen Eaton, a loss prevention manager for Back Bay Restaurant Group, Inc. Neither plaintiff could testify as to what the liquid was, where it had come from, or how long it had been on the floor. However, they both agreed that the liquid seemed clear and that it was located in the area where Mrs. Mead had slipped and fallen. Each plaintiff described the location of the fall as a common walkway or aisle used by patrons and employees alike. They each observed that a variety of employees carried trays and pitchers in the aisle on that fateful evening. Their testimony was also consistent that weather conditions were clear and dry.

Eaton testified that corporate policy in effect at the time of Mead's fall required that an incident report be prepared contemporaneous to all incidents occurring in its restaurants. With the occurrence of a slip and fall, the standard incident report contained information about the cause of the fall, the identification of any employees involved, and the condition of the floor. Eaton further testified that it was corporate policy to retain copies of incident reports. She stated that another corporate policy dictated that sanitation checklists be prepared by the restaurant staff over the course of each business day. These checklists recorded the daily cleaning activities conducted by the staff. However, she was

1. Back Bay Restaurant Group, Inc. is a corporation that owns and operates thirty-four restaurants between Washington, D.C., and New Hampshire. BBRG Rhode Island Restaurants, Inc., which owns and operates the Papa Razzi restaurant in Cranston, is a wholly owned subsidiary of Back Bay Restaurant Group, Inc.

unaware of any policy requiring that these checklists be retained. Eaton testified that she was personally notified of Mrs. Mead's fall within a day or two of its occurrence. However, she was unable to explain why neither an incident report nor a sanitation checklist for that day was available when plaintiffs requested them in discovery in May 1999. The defendants did, however, produce specimen copies of both types of documents for other unrelated dates and incidents.

At the close of plaintiffs' case, defendants moved for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The trial justice granted the motion, finding that plaintiffs' evidence was insufficient for a jury to find that employees of the restaurant were responsible for the spill, or, if a patron were responsible, that defendants had the opportunity to receive constructive or actual notice. He stated that there was "no competent evidence before [the] jury to give any indication other than rank speculation that a six inch pool of liquid was occasioned by a negligent act of the defendants' agent * * *." Moreover, the trial justice reasoned that "because our case law clearly indicates that premises liability is not an insurer of the safety of the public, [the court was] constrained to grant the motion and direct a verdict to the defendant[s]."

The plaintiffs filed separate notices of appeal. This Court ordered all parties to appear and show cause why the issues raised on this appeal should not be summarily decided. The case came before the Court for oral argument on November 13, 2003. Based upon the arguments of counsel and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and shall proceed to decide the case at this time.

On appeal, plaintiffs contend that the trial justice erred by failing to draw all reasonable inferences in their favor. They argue that, based on the evidence presented at trial, the jury could find that it was more probable than not that employees of Papa Razzi themselves had caused the liquid to accumulate on the floor. Moreover, the Meads contend that the trial justice erroneously failed to recognized that, pursuant to this Court's holding in *Gregson v. Big Bear Food Corp.*, 84 R.I. 34, 121 A.2d 325 (1956), as well as in various other jurisdictions, notice is not required if the unsafe condition was created by the landowner or its agent. Hence, they argue, the trial justice erred in ruling in defendants' favor because there was no evidence of notice to defendants. The Meads further contend that there was evidence of spoliation of the incident report which warranted an inference in plaintiffs' favor that the information contained in the document was unfavorable to defendants' position. They submit that the jury should have been allowed to consider these issues and draw reasonable inferences in light of the evidence presented at trial.

The defendants characterize plaintiffs' assertions of negligence as speculative at best. They maintain that plaintiffs failed to produce evidence of the nature and origin of the liquid, the length of time it remained on the floor, and, consequently, whether defendants were ever on notice of its presence. The defendants argue that notice is a required element in a premises-liability negligence action unless there is unequivocal evidence that a defective condition existed on the premises or that the condition was caused by the actions of an employee. The defendants agree with the trial justice that the jury would have been relying on mere "rank speculation" if given the opportunity to find negligence. Moreover, defendants argue that their failure to produce the relevant incident report and

sanitation checklists was not an instance of spoliation because there was no evidence that the documents were even created, much less destroyed.

█ It is well settled that in reviewing a trial justice's decision on a motion for judgment as a matter of law this Court is bound by the same rules and standards as the trial justice. *See Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 935 (R.I.2003) (citing *Marketing Design Source, Inc. v. Pranda North America, Inc.*, 799 A.2d 267, 272–73 (R.I.2002)). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable, favorable inferences from that testimony, without weighing the testimony or assessing the credibility of witnesses. *Barone v. Christmas Tree Shop*, 767 A.2d 66, 68 (R.I.2001). This Court will affirm the grant of a motion for judgment as a matter of law only if there are no issues of fact upon which reasonable minds may differ. *See AAA Pool Service & Supply, Inc. v. Aetna Casualty and Surety Co.*, 479 A.2d 112, 115 (R.I.1984). We have conducted the required analysis in the instant case, hereinafter discussed, and believe that the trial justice erred in granting defendants' motion.

█ Owners and possessors of property have an affirmative duty

"to exercise reasonable care for the safety of persons reasonably expected to be on the premises, and that duty includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." *Tancrelle v. Friendly Ice Cream Corp.*, 756 A.2d 744, 752 (R.I. 2000) (citing *Cutroneo v. F.W. Woolworth Co.*, 112 R.I. 696, 698, 315 A.2d 56, 58 (1974)); *see also Kurczy*, 820 A.2d at 935.

Utilizing that standard, this Court has recognized instances in which injured plaintiffs failed to satisfy the burden of proving a business owner's negligence because of a lack of evidence demonstrating how long a dangerous condition existed, or whether the owner knew or should have known of its existence. *See Massart v. Toys R Us, Inc.*, 708 A.2d 187, 189 (R.I.1998) (per curiam) (Court affirmed judgment in favor of toy store because of lack of evidence showing that employees knew of fallen basketball hoop in aisle before girl was injured); *see also Barone*, 767 A.2d at 68 (retail store properly granted judgment in slip-and-fall case in which the plaintiff presented no evidence of the nature and extent of the alleged puddle of water at the site of her fall and no proof concerning length of time alleged condition was present); *Gleason v. Almac's, Inc.*, 103 R.I. 40, 42, 234 A.2d 350, 351 (1967) (trial justice improperly denied judgment in defendant's favor because there was insufficient evidence that store had notice of roll of film on floor and no testimony about store policy on maintaining a safe condition for customers).

█ Furthermore, we have recognized that "[a]lthough '[a] plaintiff need not eliminate all other possible causes in order to establish by circumstantial evidence the probability of the defendant's negligence,' *DiGiovanni v. Shaw's Supermarkets, Inc.*, 693 A.2d 1025, 1026 (R.I. 1997) [(mem.)], a plaintiff must introduce evidence from which a reasonable jury could conclude that the defendant more probably than not was negligent." *Massart*, 708 A.2d at 189. Although it is true that a plaintiff must present a threshold amount of evidence for his negligence case to withstand a motion for judgment as a matter of law, we also have recognized that evidence that an employee or agent of a defendant was in the immediate location

just before the accident was sufficient enough for reasonable minds to disagree on the question of whether the defendant was on notice of the dangerous condition, allowing consideration by a jury. *DeRobbio v. Stop and Shop Supermarket,* 756 A.2d 209, 212 (R.I.2000) (per curiam). Similarly, when a plaintiff brings forth evidence that a landowner or his agent caused the unsafe condition, constructive notice of the condition may be presumed. *Gregson,* 84 R.I. at 40, 121 A.2d at 328. In *Gregson,* the injured plaintiff testified that before slipping on potato peelings, she observed an employee dropping potato peelings into an overfilled basket and then pushing the basket up the store's aisle just ahead of her. This Court affirmed the trial justice's ruling that plaintiff presented a material fact for determination by the jury. We said that "[i]f the testimony for plaintiff is believed, the defendant then had notice of its agent's direct negligence in causing the alleged condition." *Id.*

██ In the instant matter, the evidence clearly indicated that a puddle of liquid was seen near the accident site, and that defendants' busy employees were in the walkway where Mead's fall occurred. We recognize that plaintiffs did not present conclusive evidence of the nature or origin of the liquid, or of the amount of time it remained on the floor. However, we are of the opinion that the evidence that was presented, coupled with the circumstance of defendants' failure to produce a policy-mandated incident report, created issues of material fact that should have been presented to the jury.

██ The doctrine of spoliation provides that "the deliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence was unfavorable to that party." *Tancrelle,* 756 A.2d at 748. The defendants argue that their failure to produce an incident report did not rise to the level of spoliation since there was no evidence that the report ever was prepared or destroyed, notwithstanding the policy requirement to do so. However, we "decline to allow defendant[s] to benefit from [their] own unexplained failure to preserve and produce responsive and relevant information during discovery." *Kurczy,* 820 A.2d at 947 (holding spoliation instructions appropriate in light of the defendant's failure to produce board-meeting minutes for meeting where accident may have been discussed). In light of testimony that defendants systematically prepared and retained such documents in accordance with corporate policy, it is an issue of fact whether the incident report was prepared. Without a satisfactory explanation that such a report never existed, the jury should be permitted to infer that its production would have had adverse consequences for defendants. Moreover, we decline to place the burden on plaintiffs to prove that an unpropitious report was destroyed by defendants in anticipation of trial. *Id.*

██ We recognize the difficult task faced by a plaintiff seeking to prove negligence in a slip-and-fall case.

"Slip and fall cases are difficult to prove; there will hardly ever be a situation in which a [restaurant] owner or manager comes forward and admits that the floor was wet and that the dangerous condition should have been corrected in a more timely manner. This is part of human nature. These cases are established through circumstantial evidence from which a jury can infer the existence or nonexistence of negligence on the part of a defendant." *Barone,* 767 A.2d at 71 (Goldberg, J., dissenting).

The plaintiffs here were faced with an even more formidable task than that of the ordinary premises-liability case because of

defendants' failure to produce an incident report that may have contained the information necessary to demonstrate negligence. Despite that handicap, plaintiffs did, however, produce evidence about the procedures that defendants customarily and ordinarily use in documenting and retaining reports of any and all such events that occurred at their restaurants. Hence, it is our opinion that the fact-finder could infer that there was a report and that its contents were damaging to defendants.

We are satisfied therefore, that based on the facts and attendant circumstances of this case, the trial justice impermissibly resolved evidentiary inferences in favor of the defendants that were more properly suited for determination by the jury. In viewing the evidence in the light most favorable to the plaintiffs, without weighing the evidence or evaluating the credibility of the witnesses, we hold that factual issues exist upon which reasonable persons might draw different conclusions. Accordingly, we conclude that the trial justice erred in granting judgment as a matter of law in favor of the defendants.

For the foregoing reasons, we reverse the judgment of the Superior Court. The record shall be remanded to the Superior Court for further proceedings in accordance with this decision.

FLANDERS, J., concurring.

I concur in the judgment of the Court, but I do so for slightly different reasons than those emphasized by the majority. But for the defendant restaurant's unexplained failure to produce the incident reports and the daily sanitation checklists that the restaurant customarily prepared in connection with accidents such as occurred in this case, I would agree with the trial justice that, as a matter of law, the plaintiff's evidence was insufficient for a jury to find that employees of the restaurant were responsible for the spill—or, if a patron were responsible, that the defendants received constructive or actual notice of same. At least in the absence of any evidence concerning how long the fluid was present on the floor, the six-inch pool of clear liquid was not so obvious a condition that a reasonable jury could conclude that, before the injured patron slipped and fell, employees of the restaurant either must have noticed it or must have been responsible for creating it in the first place.

Most importantly, no matter how difficult slip-and-fall cases may be to prove, they still have to be proven through evidence of negligence, and not just by relying on rank speculation. And our job on appeal is certainly not to smooth the troubled waters for plaintiffs who otherwise might have a hard time proving their slip-and-fall cases. The bottom line is that, no matter how difficult it may be to prove a slip-and-fall case, we should not allow juries to speculate that, just because somebody slipped and fell, the defendant or its agents must be held responsible. Rather, the evidence must rise to a level that, if credited, a reasonable jury justifiably could conclude that, more probably than not, defendant was responsible for causing the slip and fall.

In this case, but for the application of the spoliation doctrine, I do not believe the evidence was sufficient to allow the jury to speculate about who caused the spill of clear liquid on the floor and how long it was there before the injury occurred. On these facts, it would have been impossible for the jury or any of us to know other than by engaging in rank speculation. Nevertheless, the unexplained absence of the incident report and the daily sanitation checklist gave rise to a permissible inference that these documents contained information that would indicate that the restaurant was at fault for allowing the puddle to

remain there on the floor in the middle of an aisle leading to the exit door, or that one of the restaurant's employees was responsible for creating the spill.

For these reasons, I concur in the decision to reverse the trial justice and remand this case for trial.